UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR 21-012 JJM LDA |
| | ) | |
| LUIS JOEL SIERRA | ) | |

_____

OBJECTION TO GOVERNMENT'S REQUEST FOR

CUSTODIAL EVALUATION

In response to Mr. Sierra's motion to determine competency and disclosure of his mental health evaluation showing him to be incompetent, the government has requested the Court to order a second evaluation of Mr. Sierra, and asserts that the evaluation should be conducted in Bureau of Prisons ("BOP") custody. The Court should deny this request. Such an evaluation would take Mr. Sierra from his home on pre-trial release and re-incarcerate him without any consideration of his complete compliance with his release conditions. Most importantly, however, the government has not presented information making Mr. Sierra's re-incarceration and examination in custody necessary, as opposed to an outpatient exam.

To be clear, 18 U.S.C. § 4241 does not provide the government with any right or entitlement to a psychological evaluation of Mr. Sierra, let alone a custodial exam. Indeed, the statute says "*the court* may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c)" when presented with information showing reasonable cause to believe the defendant is mentally incompetent to stand trial. 18 U.S.C. § 4241(b) (emphasis added). Mr. Sierra

1

has presented such evidence and the authority to order a second exam is the Court's alone. Section 4247(b) also requires the Court to ensure any exam be performed "by a licensed or certified psychiatrist or psychologist", or more than one evaluator if appropriate. The law, § 4241 or § 4247, does not make any reference to the government requesting or designating any evaluator or circumstances of such an evaluation. That said, the Court *may* commit the defendant to government custody for the evaluation if necessary, but the statute does not in any way make that a standard prospect or instruct the Court to defer to the government's desires. 18 U.S.C. § 4247 (b).

The Court's decision to re-incarcerate Mr. Sierra or not under § 4247(b) is not basely discretionary. The decision to re-incarcerate for the purpose of a psychological examination must comply with his constitutional Due Process protections. *See United States v. Gomez-Borges*, 91 F. Supp. 2d 477, 478-79 (D.P.R. 2000); *United States v. Neal*, 679 F.3d 737, 740 (8th Cir. 2012); *In re Newchurch*, 807 F.2d 404, 408 (5th Cir. 1986). Compelling reasons which outweigh Mr. Sierra's constitutional liberty interest must exist to allow re-incarceration. *Gomez-Borges*, 91F. Supp. 2d at 481, *citing United States v. Deters*, 143 F.3d 577, 583 (10th Cir. 1998), and *Newchurch*, 807 F.2d at 411. Essentially, is the deprivation of Mr. Sierra's liberty necessary because an outpatient examination is unavailable or unfeasible. *Neal*, 679 F.3d at 740-41; *see also Deters*, 143 F.3d 577, 582-84 (10th Cir. 1998); *Newchurch*, 807 F.2d at 409.[1] The government – the proponent of custody here – must show this re-incarceration necessity by clear and convincing evidence. *Gomez-Borges*, 91 F. Supp. 2d at 478-79; *Newchurch*, 807 F.2d at 408. The government, though, has failed to address this point entirely. It has declined to even

---

[1] "Read together, the [18 U.S.C. § 4247(b)] provision that the court "may" commit a person to the custody of the Attorney General, the legislative statement that commitment should not be ordered if the examination can be conducted on an outpatient basis, and the provision that, if the defendant is committed, he shall be examined in the nearest suitable facility, all require that, before committing a defendant, the court determine, on the basis of evidence submitted by the government, subject to cross examination, and to rebuttal by the defendant, that the government cannot adequately prepare for trial on the insanity issue by having the defendant examined as an outpatient." *Newchurch*, 807 F.2d at 411.

2

investigate outpatient options thus far. Instead it has characterized a custodial exam as more thorough, unbiased, and complete than the outpatient alternative. That position is has a phantom foundation.

Mr. Sierra is presently on pre-trial release. He has been completely compliant with his release conditions, which include home confinement with electronic monitoring. While those conditions are onerous, Mr. Sierra has been fully accountable and followed the directions of the probation department. The conditions have ensured that Mr. Sierra is available for court and lessened any perceived danger to the community. The conditions have also made Mr. Sierra available for immediate evaluation in the community. There is no necessity, no compelling reason, to re-incarcerate Mr. Sierra for a psychological evaluation. Mr. Sierra's constitutional liberty interests outweigh the government's desire for his re-incarceration and the Court must deny the government's request.

**Regarding the Government's Characterizations**

The government believes that a BOP evaluation has a higher quality than an outpatient study, is standard practice in the Court, is unbiased or non-biased, and it is in Mr. Sierra's interest. The government has not, however, investigated any outpatient option for comparison. The government's beliefs about a custodial examination, as opposed to an outpatient evaluation, are not accurate and do not demonstrate any compelling necessity.

**Thoroughness**

The government asserts "A full examination by BOP staff [ ] is necessary for the Court to have confidence in the determination." ECF #38 at 1. It suggests that community based evaluations are incomplete and abbreviated, and the Court ought not

to rely on such a report. *Id.*[2] The government's faith in a BOP evaluation – and lack of faith in an outpatient exam - does not make re-incarceration of Mr. Sierra necessary. The necessity is based on the lack of viable outpatient options or other compelling reason. Further, the government's conclusions simply ignore real life. People are evaluated for psychological issues every day, and the overwhelming majority are people not in custody. Evaluating a person's mental health or psychological make-up is the same process regardless of that person's circumstance being tied to the criminal justice system. The standard of mental competence may be specific to criminal cases, but the evaluation methods are not. Never mind the fact that the BOP observation would be conducted in the completely artificial environment of a prison.[3] The alleged quality of a custodial examination does not present any compelling reason for re-incarceration and does not demonstrate any necessity.

**Standard Practice**

The government believes that a custodial BOP evaluation is the *practice* of this Court. ECF #38 at 3. It is not. Each case before the Court is unique to the person charged and the circumstances present. In cases where a defendant is detained it may be appropriate and necessary to have the BOP conduct a custodial psychological evaluation. That situation has different liberty issues. Here, however, Mr. Sierra is not detained. Outpatient examination is possible. Custodial evaluation is not necessary. The government cannot not characterize his re-incarceration as necessary because it believes it to be the standard practice.

---

[2] In footnote 1 of its motion, ECF #38, the government suggests that Dr. Parsons's evaluation is incomplete or lacking because Dr. Parsons did not speak with the "prosecution team" or review medical records from Mr. Sierra's brief stay at the Wyatt Detention Facility. These observations do not support the government's argument for the compelling necessity of a custodial examination; they are simply areas which it could address during cross-examination of Dr. Parsons at the competency hearing.

[3] The government also argues that custodial observation will be better able to uncover malingering. ECF #38 at 5. In fact, outpatient evaluations do consider the possibility of malingering. Mr. Sierra, however, suffers from an organic chromosomal disorder which cannot be faked, and has been treated and monitored for mental illness issues since he was a child.

**Bias**

The government claims that a BOP custodial evaluation is less biased than a community based examination. *See* ECF #38 at 3. It points to the BOP regulations which pledge to conduct appropriate psychological evaluations without deference to any party or the Court, and insinuates that the same ethics do not apply to paid psychological professionals conducting outpatient evaluations. *Id.* This is nonsense. The Court well knows that psychologists and psychiatrists are all governed by codes of ethics – just like lawyers - which frown upon lying in reports or slanting findings.[4] Also, it is a plain mischaracterization to label a BOP examination as "independent" or free from bias. *Id.* The BOP is a government agency and all of their employees are paid by the government (which is the adverse party to Mr. Sierra in this case). Moreover, the BOP is a part of the executive branch and specifically a part of the Department of Justice (just like the United States Attorney's Office). The appearance of bias plainly exists in a BOP custodial evaluation, at least as much in that of a hired outpatient examiner. That being said, we hope and expect that any psychologist/psychiatrist – paid by either party – would conduct an ethical and unbiased exam. Regardless, the government's beliefs concerning bias do not present any compelling reason to support the necessity for Mr. Sierra's re-incarceration.

**Mr. Sierra's Best Interests**

The government suggests that re-incarceration now is in Mr. Sierra's interest because it may lessen his later custody based on a finding of incompetence. ECF #38 at 5-6. Its logic does not follow. Mr. Sierra is incompetent. The next step of commitment to attempt to restore competence is inevitable. *See* 18 U.S.C. § 4241 (d). Should he not be able to be restored to competence, then he faces perhaps further commitment in a detention facility. *Id.* Alternatively, if he is found competent, or is

---

[4] For psychologists, sponsored by the American Psychological Association: *Ethical Principles of Psychologists and Code of Conduct* (https://www.apa.org/ethics/code).

5

restored to competency, he then faces a mandatory minimum sentence of 5 years in prison based on the charges preferred by the government. His re-incarceration for a psychological evaluation has no meaningful effect on his potential future detention or imprisonment. Regardless, this government concern does not establish the necessity of a custodial evaluation.

### Economics

Lastly, the government claims some concern over the costs associated with a non-custodial examination. ECF #38 at 5. Although it makes the allusion, a custodial BOP evaluation is not free.[5] It is simply convenient for the government. Similarly, an outpatient examination is convenient for Mr. Sierra, and he has a constitutional right to liberty. Although the government has declined to yet assess outpatient options, it will likely be able to find and afford an expert of its choosing to recommend to the Court. Economics do not present any compelling reason for Mr. Sierra's re-incarceration.

## Conclusion

The Court has the authority to order a psychological evaluation of Mr. Sierra in this instance. While the Court could detain Mr. Sierra to accomplish this exam, compelling reasons for his re-incarceration must exist to overcome his constitutional right to liberty. The government has not shown any such reason. The Court can clearly allow a second psychological examination, but it must deny the government's request for a custodial exam.

Respectfully submitted
Luis Joel Sierra
By his attorney,

---

[5] Incarceration is in fact very expensive. The average cost per inmate in the BOP in 2017 was roughly $35,000 per year. https://www.federalregister.gov/documents/2018/04/30/2018-09062/annual-determination-of-average-cost-of-incarceration. The cost for mentally ill inmates is much higher.

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was delivered by electronic notification to Paul Daly, Assistant United States Attorney, on April 16, 2021.

/s/ Kevin J. Fitzgerald