UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES of AMERICA, )
)
)
v. )  CR. No. 21-CR-00012-JJM-LDA
)
LUIS JOEL SIERRA, )
Defendant. )
)

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Chief Judge.

Before the Court is whether Defendant Luis Sierra is competent to stand trial. Mr. Sierra and the Government have both filed memoranda in support of their positions. ECF Nos. 61, 63.

### I. BACKGROUND

A grand jury indicted Mr. Sierra on one count of damaging or destroying a vehicle, by means of fire or an explosive, that directly or proximately caused personal injury. *See* 18 U.S.C. § 844(f)(2) (detailing the offense) While held at Donald F. Wyatt Detention Facility, Dr. John Parsons, Ph.D. performed an initial psychological evaluation of Mr. Sierra. ECF No. 35-1. Dr. Parsons found that, "[t]o a reasonable degree of psychological certainty," there existed "substantial impairment in [Mr. Sierra's] ability to provide meaningful participation and cooperation in the legal proceedings against him." *Id.* at 11. Dr. Christopher Matkovic, M.D. then performed his own psychiatric evaluation of Mr. Sierra. ECF No. 45. Dr. Matkovic concluded, "to a reasonable degree of medical certainty, that [Mr. Sierra] is incompetent to stand

trial." *Id.* at 15. He specifically opined that, "[g]iven Mr. Sierra's apparent inability to answer questions regarding legal proceedings, I feel forced to find him incompetent at this time." *Id.* That said, Dr. Matkovic also remarked that "it is reasonable to expect that Mr. Sierra would be able to understand legal proceedings with more education." *Id.* Based on Dr. Matkovic's evaluation, the Government renewed an earlier request for a custodial evaluation to determine Mr. Sierra's competency pursuant to 18 U.S.C. §§ 4241(b), 4247(b). ECF No. 44. Magistrate Judge Lincoln Almond recommended that the Court deny the Government's renewed request for a custodial evaluation and find that, by a preponderance of the evidence, Mr. Sierra was not competent to stand trial. ECF No. 48 at 5. The Court adopted Magistrate Almond's Report and Recommendation. ECF No. 49.

Pursuant to 18 U.S.C. § 4241(d), the Government transported Mr. Sierra to FMC Butner in North Carolina for four months to undergo a program that would help him better understand legal proceedings such that the Court could find him competent to stand trial. *See* ECF No. 51 (ordering this statutory procedure). After four months at FMC Butner, the medical staff there opined that, "although Mr. Sierra is currently suffering from a mental disease or defect, namely specific learning disorder and borderline intellectual function, the deficits are not of sufficient severity to render him not competent to stand trial." ECF No. 54 at 24. This Court then held a competency hearing. *See* ECF No. 59 (transcript of the hearing). Mr. Sierra's lawyer, an Assistant United States Attorney ("AUSA"), and the Court asked him a series of probing questions about himself and his alleged conduct. *Id.*

## II. STANDARD OF REVIEW

"It is well settled that the conviction of a person who is legally incompetent to stand trial violates due process." *United States v. Velázquez-Aponte*, 940 F.3d 785, 794 (2019) (citations omitted); *see also* 18 U.S.C. § 4241(a) (codifying this standard). "The test for competence to stand trial . . . is whether the defendant has the present ability to understand the charges against him and communicate effectively with defense counsel." *Cooper v. Oklahoma*, 517 U.S. 348, 368 (1996) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)). This functional test focuses on the defendant's ability "to understand the proceedings against him and consult rationally with his counsel so as to assist in his own defense." *United States v. Malmstrom*, 967 F.3d 1, 5 (1st Cir. 2020) (citations omitted). While the defendant must have a "rational understanding of the nature of the proceedings," due process requires only that such understanding concern the most "critical parts." *Id.* at 6 (internal quotation marks omitted) (citations omitted). Ultimately, a preponderance of the evidence must show that a defendant *now* meets both parts of the competency standard. 18 U.S.C. § 4241(a).

## III. DISCUSSION

The Court first reviews the parties' arguments. The Court then turns to an analysis of the evidence.

### A. The Parties' Arguments

3

The Government argues that medical evidence demonstrates that, with appropriate consultation with his lawyer and others, Mr. Sierra has a rational and reality-based understanding of the key legal proceedings against him. ECF No. 61 at 11-15. It contends that the medical evidence also demonstrates that Mr. Sierra can rationally communicate with his counsel. *Id.* at 14-15. Mr. Sierra urges[1] that the competency hearing best represents his current mental state. ECF No. 63 at 4. He specifically argues that his poor retention and susceptibility to suggestion preclude a finding of competence. *Id.* at 4-6.

The Government first highlights references by FMC Butner medical staff to Dr. Matkovic's report that Mr. Sierra was able to adequately respond to some questions while remaining completely unable to respond to others. ECF No. 61 at 12. The Government stresses that this discrepancy "suggest[ed] that he was either exaggerating deficits or unwilling to expend the effort needed to answer the questions (or both)." *Id.* (alteration in original) (citing ECF No. 45 at 8). And medical staff at FMC Butner found that, "with encouragement and prompting, [Mr. Sierra] was able to talk through hypothetical situations in his legal case in a rational and reality-based manner." *Id.* at 4 (citing ECF No. 45 at 11). The Government further raises that, at the competency hearing, Mr. Sierra understood the roles of various courtroom actors

---

[1] Though not always employed, in many court orders, the sentence "Party A argues . . . ." impliedly means "Party A, *through its counsel*, argues . . . ." While the Court employs this simplification here for ease of reading, the Court appreciates the resulting oddity that it creates. Meaning, it seems peculiar to say that a defendant who cannot understand the legal proceedings against her can nonetheless argue that she meets the rather complicated legal standard for being not competent to stand trial.

4

(e.g., judge, stenographer, jury, and witnesses). *Id.* at 13-14. He understood that, in his position as the accused—whose guilt the jury would decide—he possessed various rights (e.g., to counsel and to testify). *Id.* at 14. The Government additionally suggests that being able to better understand these legal proceedings by consulting counsel itself demonstrates Mr. Sierra's ability to rationally communicate with counsel. *See* ECF No. 61 at 14 ("During his direct examination, Defendant displayed the ability to listen to his attorney and respond to legal guidance."). Most notably, Mr. Sierra acknowledged on cross-examination that he grasped legal concepts better when his attorney spent time discussing them with him. *Id.*

Mr. Sierra counters that his ability to rationally understand these proceedings is hindered by his inability to retain information. *See* ECF No. 63 at 4 (pointing to schools' difficulty in teaching him to read over a period of more than thirteen years). He submits that multiple interactions during the competency hearing bolster this account. *Id.* at 4-6. For example, he struggled with the conceptual notion of a right, and he had to be provided the word "jury" when discussing its role. *Id.* at 4. He could not explain what it meant to "testify" despite remembering the word from the beginning of the hearing. *Id.* And he could not articulate how telling the truth was an obligation of being under oath and that consequences existed for not telling the truth under oath. *Id.* Mr. Sierra additionally contends that he is quite prone to adopting the suggestions of others. *Id.* For example, Mr. Sierra agreed with the statement that he had flown into Providence from FMC Butner, even though he had actually flown into Boston. *Id.* He also could recognize and use various legal terms,

5

but he could not explain these terms in a way that conveyed an understanding of them. *See id.* at 5 (contending that this behavior amounts to "parroting").

### B. The Court's Analysis of the Evidence

Given the complications in trying to clarify psychological nuances, all the Court can do is rely on its own judicial experience. This judicial experience includes reviewing expert evidence and making legal rulings based on witness testimony (or, in this case, a defendant's testimony). In the medical environment of FMC Butner, Mr. Sierra may have been able to discuss legal scenarios in a rational and reality-based manner, but this ability did not translate to the courtroom in Providence. *See generally* ECF No. 59 (reflecting several examples of this inability). Mr. Sierra still demonstrates material deficits in retaining key information, which translate to poor understanding of critical terms. *See, e.g., id.* at 46-47 (reflecting Mr. Sierra's struggle to recall various legal terms). He appears able to better discuss legal proceedings after consultation with his lawyer. *See, e.g., id.* at 42 (reflecting that Mr. Sierra was better able to understand legal concepts after receiving explanations of them). But this appearance quickly vanishes when he is pressed on these topics. The Court walks through a couple of examples that lead it to this conclusion.

The Court first recognizes that the topics raised by the parties have varying levels of significance. For example, it is not critical to the legal proceedings that Mr. Sierra flew from North Carolina to Boston, and not Providence. *See id.* at 44-45; 52-53 (reflecting multiple exchanges between Mr. Sierra and lawyers on this topic). But examples like this one are at least probative of Mr. Sierra's general inability to

6

understand and rationally communicate, and thus give the Court a basis to question other instances of seeming understanding. This example is particularly troubling because Mr. Sierra initially responded affirmatively to the AUSA's question that asked if he had flown into Providence. *Id.* at 44-45. But he then claimed to "remember" that he had flown into Boston after his lawyer offered that correction. *Id.* at 52-53. The Court could not tell what Mr. Sierra remembered compared to what he repeated from a lawyer's question. And had the AUSA subsequently stood up on recross-examination and told Mr. Sierra that his lawyer was wrong, and, in fact, he had flown into Providence, Mr. Sierra might well have agreed (despite "remember[ing]" to have flown into Boston). *See id.*

On topics of greater importance to these legal proceedings, Mr. Sierra showed the same inclinations. For example, he could not comprehend the idea of an oath. *Id.* at 5-6 (reflecting an exchange on this topic). When asked if "promise" is a synonym of "oath," Mr. Sierra responded in the negative. *Id.* at 5. To be sure, he acknowledged that telling the truth meant not telling a lie (in the context of this discussion on oaths) and that he would tell the truth in court. *Id.* But he did not know what would happen if he did not tell the truth under oath. *Id.* at 6. That Mr. Sierra understood his obligation to—and agreed to—tell the truth in court is reassuring. Yet the Court remains uncertain if he grasped what telling the truth meant in that context. One easily enough can regurgitate formulaic rules of court, akin to recognizing truths and lies as opposites. Yet accepting such recitation as understanding would resemble saying that a person knows how to speak a language when she has memorized all the

7

vocabulary and grammar rules but had never conversed in the language. Accordingly, the Court finds that Mr. Sierra meets neither part of the competency to stand trial test.

## IV.   CONCLUSION

The Court finds that these examples—among many others not repeated here—demonstrate that Mr. Sierra does not have a rational reality-based understanding of the legal proceedings against him. The Court also finds that Mr. Sierra's consultation with his lawyer in these examples do not demonstrate that he was able to rationally communicate, let alone seek meaningful legal advice. For these reasons, the Court finds that Mr. Sierra is not competent to stand trial and further finds, to a substantial probability, that additional hospitalization would not enable Mr. Sierra to attain capacity.

IT IS SO ORDERED

_____
John J. McConnell, Jr.
Chief United States District Judge

April 19, 2023

8